DOMENGEAUX, Judge.
Gloria Comeaux and her husband, Edward Comeaux, Jr., brought this action seeking damages for an injury Mrs. Co-meaux sustained during a medical examination. The defendants in this suit are the doctor who performed the examination, Edward P. Lyons, M.D., and Doctor Lyons’ malpractice insurance carrier, Louisiana Medical Mutual Insurance Company.
Upon the completion of the plaintiffs’ case-in-chief, the defendants moved the trial court to enter a judgment of dismissal. The trial judge, without assigning reasons, granted the defendants’ motion and dismissed the plaintiffs’ case. It is from this decision that the plaintiffs appeal.
Gloria Comeaux was admitted into Our Lady of Lourdes Hospital in Lafayette on July 10, 1983. She had been experiencing abdominal pains and Doctor Lyons, her internist,[1] suggested she enter the hospital to undergo a series of tests.
The injury in question occurred on July 14, 1983, in Mrs. Comeaux’s hospital room. Doctor Lyons saw Mrs. Comeaux on this occasion for the purpose of examining a density or fullness in the right mid-portion of her abdomen.
Initially, Doctor Lyons attempted to examine Mrs. Comeaux on her hospital bed. This, however, proved unsatisfactory and he instructed her to leave her bed and move onto a couch in the room. Pursuant to Doctor Lyons’ direction, Mrs. Comeaux, with the assistance of a nurse, moved onto the couch. Once on the couch, Mrs. Co-meaux was positioned flat on her back with her feet flat on the couch and her knees raised, bent and spread apart.
Doctor Lyons positioned himself on the right side of his patient. He rested one knee on the floor and the other was bent at about a ninety degree angle. Once so positioned, Doctor Lyons proceeded to survey Mrs. Comeaux’s abdomen and conduct a pelvic examination.
Mrs. Comeaux’s right leg was injured, either during the examination or immediately thereafter. The evidence suggests that the injury was the result of contact between Mrs. Comeaux’s leg and, either the buttons on Doctor Lyons’ coat sleeve, a stethoscope he was carrying in his coat pocket, or his “beeper”, the paging device he had attached to his belt. Although the evidence is inconclusive as to the exact cause of the injury, Doctor Lyons testified, “[tjhere is no doubt in my mind that she sustained the injury from something on the right side of my clothing.”[2]
*278 Mrs. Comeaux, as a result of the contact, suffered a lesion on the outer aspect of her right leg, approximately six inches above her ankle. The lesion, as described by Mrs. Comeaux, was about the size of a quarter or fifty-cent piece. Doctor Lyons testified that the area surrounding the lesion was red, that the skin was scraped and that towards the end of the wound the skin was folded upon itself. Fat tissue could be seen in a portion of the injury.
Ordinarily, the contact which resulted in Mrs. Comeaux’s injury would not have been of sufficient force to cause injury. Mrs. Comeaux, however, was in poor health and was particularly susceptible to such an injury.
Mrs. Comeaux, at the time of the incident, had long suffered from rheumatoid arthritis. Her doctors, prior to Doctor Lyons, had attempted to relieve the effects of the arthritis for many years by prescribing steroids. Mrs. Comeaux’s skin, as a result of the prolonged use of steroids, had become very thin. No longer did it provide her with the same level of protection against physical intrusion that a healthy person would experience.
Doctor Lyons was well aware of this aspect of Mrs. Comeaux’s condition. Doctor Lyons was, in fact, attempting to reduce Mrs. Comeaux’s dependency on the steroids because of the many adverse consequences her continued use had and would continue to cause.
The authority for a trial court to render a judgment of dismissal is derived from La. Code Civ.Proc. art. 1672 (1960) (amended 1983). Subsection “B” of article 1672, which specifically addresses nonjury trials, provides,
“B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.”
The proper standard to be applied by a trial court in ruling upon a motion to dismiss is to “... weigh and evaluate all of the evidence presented up to that point in the trial ...” and to dismiss the action if the plaintiff has not shown proof, by a preponderance of the evidence, entitling him to relief. Financial Corp. v. Estate of Cooley, 447 So.2d 594, 598 (La.App. 3rd Cir.1984). See also, Bradley v. Hunter, 413 So.2d 674 (La.App. 3rd Cir.1982), writ denied, 415 So.2d 952 (La.1982).
The issue before this Court is, therefore, “Did Gloria and Edward Comeaux establish by a preponderance of the evidence, a right to relief?” Did they, in other words, establish a prima facie case of malpractice or plain negligence against Doctor Lyons and, thereby, shift the burden to Doctor Lyons to rebut the plaintiffs’ evidence?
We hold, in the absence of rebuttal evidence, that the plaintiffs have established a prima facie case entitling them to relief. The trial court erred in granting the defendant’s motion to dismiss.
We can only conclude, in the absence of any reasons for judgment, that the trial judge granted the defendants’ motion by erroneously concluding that the plaintiffs had failed to establish a right to relief because they had not established the standard of care to be exercised by an internist. It does not appear to us that the plaintiffs were so burdened. We do not believe that the facts of this case dictate that the plaintiffs bear the burden of proving the standard of care of a particular medical specialty.
La.R.S. 9:2794 (1975) (amended 1979 & 1985), which sets forth the plaintiff’s burden of proof in a medical malpractice action, specifically states with regard to specialists,
“(1) ... [wjhere the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff *279 has the burden of proving the degree of care ordinarily practiced by physicians ... within the involved medical specialty.” (Emphasis added).
The acts alleged in this case do not raise any issues peculiar to the practice of any medical specialty. The negligence alleged raises no issues addressing the practice of an internist, any more than if this doctor had tripped a patient in a hospital corridor.
The defendant, at the time of the injury, was conducting both an abdominal and a pelvic examination. He injured his patient, a person known to him to have skin with a propensity to being easily damaged, in an area of her body totally unrelated to his examinations. He injured her while conducting his examination not on her hospital bed or an examination table but, rather, on an ordinary couch in her hospital room. Finally, Doctor Lyons injured his patient because, with the exception of his stethoscope which he was not using at the time, he had foreign objects on his person which could, and in this case did, injure.
We conclude, based solely on the evidence presented thus far, that the plaintiffs were not burdened with proving the standard of care of an internist.
Therefore, for the above and foregoing reasons, the judgment of the district court, dismissing the plaintiffs’ suit is reversed. This case is remanded for further proceedings not inconsistent with the- views expressed herein, including, of course, the right of the defendants to present their evidence on defense and rebuttal of this claim.
REVERSED AND REMANDED.

. A specialist in the diagnosis and medical treatment of internal diseases.

. Testimony of Doctor Lyons, p. 112.